691 P.2d 1252

Stephen L. CUTLER and Helen A. Cutler, husband and wife, Third-Party Plaintiffs-Respondents,

v.

Frank GEISSLER, d/b/a Geissler Construction Company, Third-Party Defendant-Appellant.

No. 14064.

Court of Appeals of Idaho.

Nov. 19, 1984.

Stephen W. Boller, Hailey, for third-party defendant-appellant.

Gregory L. Crockett, Hopkins, French, Crockett & Springer, Idaho Falls, for third-party plaintiffs-respondents.

WALTERS, Chief Judge.

This is a dispute between homeowners and a general contractor arising from construction of a new house. The parties had agreed to an estimated base contract price for the construction. Subsequently, as construction progressed, the "estimate" was revised and the homeowners eventually paid, either to the general contractor or to various subcontractors, considerably more than the base price. The dispute ripened when a building materials supplier filed suit against the homeowner to foreclose a materialman's lien. A district court ultimately found that the homeowners had overpaid. Judgment was entered against the general contractor for some of the "extra" amounts paid. The general contractor has appealed. He presents the following issues: (1) Did the trial court correctly "construe" the agreement between the contractor and the homeowners? (2) Did the trial court arrive at the proper measure of damages? We vacate the judgment and

remand the case for further findings by the trial court.

The homeowners, Stephen and Helen Cutler, contacted Frank Geissler, a residential building contractor, about building a house on land the Cutlers owned near Challis, Idaho. Based upon an informal set of plans prepared by the homeowners, the contractor made a written proposal to construct the house for $62,365.40. It is undisputed that this figure subsequently was modified by the parties both before and during the construction and some of the changes were noted on the written proposal. As the construction neared completion, a lien foreclosure suit was filed against the homeowners by a materials supplier. The homeowners brought the contractor into the suit on a third-party complaint. Essentially, the homeowners believed that they were not responsible for payment of the materialman's claim because they had already paid out more than the initial base contract price. The contractor responded, alleging the homeowners were obligated to pay for the building materials because of the uncertainties created by the informal plans provided by the homeowners. The contractor also counterclaimed against the homeowners for recovery of an alleged balance due on the construction contract. The homeowners settled with the materialmen, prevailed at trial on their claim against the contractor, and a judgment of $7,773.97 was entered against the contractor.

Both parties testified concerning the initial contract estimate and the revisions to it. From the evidence presented, the trial court essentially made the following determination:

The homeowners agreed to pay for the construction:

| | |
|---|---|
| Initial proposed price | $62,365.40 |
| Extra plumbing | + 1,125.00 |
| Extra material costs | + 1,700.00 |
| Additional trusses | + 1,100.00 |
| Painting (originally part of contract price, but Cutler decided to do himself) | − 1,800.00 |
| Total: | $64,490.40 |

The homeowners in fact paid:

| | |
|---|---|
| To Geissler | $54,000.00 |
| To materialman (Houston Lumber Co.) | 11,000.00 |
| To materialman (Allied Builders) | 8,019.05 |
| For cabinet Geissler failed to provide | 1,800.00 |
| For entry and fireplace rock | 200.00 |
| Boom truck rental | 120.00 |
| Floor beams | 86.11 |
| Clean up | 66.00 |
| Total | $75,291.16 |

The difference between the two totals reveals a potential recovery of $10,800.76 for the homeowners. However, against this possible award the trial court gave the contractor credit for the following items not included in the base contract price but which were paid for by the contractor:

| | |
|---|---|
| Electrical paid by Geissler | $1,700.00 |
| For cabinet door installation | 180.00 |
| For chimney cap | 72.79 |
| Extra cost, taping and texturing | 1,074.00 |
| Total credited to Geissler | $3,026.79 |

As noted, judgment was then entered in favor of the homeowners for $7,773.97 ($10,800.76 less $3,026.79).

The contractor contends that the court's calculations misconstrued the agreement of the parties. He asserts that by the parties' agreement, the contractor was to receive the base estimate of $62,365.40 plus the cost of other materials later agreed upon as construction progressed. In his view, the evidence established the following tabulation:

| | |
|---|---|
| Estimate: | $62,365.40 |
| Plus: | |
| Windows | 1,414.00 |
| Extra Materials | 1,700.00 |
| Extra plumbing | 215.00 |
| Trusses | 1,100.00 |
| Electrical | 1,700.00 |
| Texturing | 1,074.00 |
| Cabinet doors, labor | 180.00 |
| Chimney cap | 72.99 |
| Stair rail | 150.00 |
| Sub-Total | $69,971.39 |
| Less: | |
| Paint & cabinets | − 3,600.00 |
| | $66,371.39 |
| Payments received from Cutler | −54,000.00 |
| Total | $12,371.39 |

■ In our view the contractor's approach overlooks a significant factor. The original estimate figure was arrived at from the contractor's calculations of certain materials which would be used in the construction. It is undisputed that part of those materials ultimately were obtained on credit from Houston Lumber Company and Allied Builders and that those accounts were satisfied directly by the homeowners. We believe the trial court did not err in giving the homeowners credit on their agreement with the contractor for those accounts—otherwise the homeowners would have paid twice for the same materials. The court did not misconstrue the agreement between the homeowners and the contractor; rather the court in essence found that the parties' agreement consisted of the original estimate plus subsequent modifications and revisions arrived at by mutual consent through parol agreement or inferred from the conduct of the parties. *See Harrington v. McCartney*, 91 Idaho 307, 420 P.2d 790 (1966).

■ The contractor also argues that the trial court utilized an improper measure of damages in arriving at its judgment in this case. The contractor asserts that the court should have totalled all materials and labor contemplated (not including those items found to be ordered as changes and to be paid for solely by the homeowner), added a nominal profit and then deducted the payments made by Cutler, to arrive at a total amount due. Upon this basis, the contractor argues that he would have received the reasonable value of "extra" work and material, and would have been compensated upon a theory of quantum meruit, citing *Harrington v. McCarthy, supra*. We think Geissler reads *Harrington* too broadly. In *Harrington*, the builder recovered because the work he performed was not necessitated by the original contract, but was subsequently requested by the owner. The requested labor and material was held

to be "extra" rather than "additional" work. The distinction between extra and additional work was explained by our Supreme Court in *Obray v. Mitchell*, 98 Idaho 533, 567 P.2d 1284 (1977), where the Supreme Court said that "extra" work arises outside and entirely independent of the contract, while "additional" work is something necessarily required in the performance of the contract and without which the contract could not be carried out. An owner is liable for payment for "extra" but not "additional" work.

In this case there are no findings by the trial court regarding the nature of the supplemental work performed by the contractor as either "extra" or "additional." Neither does the contractor argue on appeal that the work was "extra," as defined in *Obray*. He urges that he is entitled to compensation simply because he performed the work. We believe that permitting recovery merely on that basis alone would abrogate the rule in *Obray* and render meaningless the agreement between the contractor and the homeowners. We decline to apply the rule regarding damages urged by the contractor. We believe, however, that the trial court did err in arriving at the final determination of the amounts due under the parties' contract.

In its written decision in this case, the trial court made the following finding:

In connection with negotiations for the contract, likely in late May prior to the proposal execution which is dated June 9, 1978, a discussion was had concerning Ex. B.[1] Geissler told Cutler certain items used for the proposal would be estimates, subject to actual cost allowance over or under. The discussion referred to materials, and plumbing and taping and texturing work which were to be subcontracted. These were discussed as necessarily estimated because lack of specifications prevented precision as to

1. "Exhibit B" was a component list of the materials and labor upon which the final "proposal" was based.

materials needed and obtaining firm subcontracting bids. There is clear and convincing evidence Cutlers assented to this proposition and were aware of this contractual intent.... In the conversation, Geissler estimated material overrun would be $1400.00 to $1700.00....

The trial court then found:

The necessary materials far exceeded the $1700.00 estimated overrun. Geissler is entitled to, and asks only for, the $1700.00.

We believe that part of the contractor's proposal was subject to the *Obray* rule and part was not. The "materials, plumbing and taping and texturing work," referred to in the trial court's finding, were subject to an "over or under" allowance, i.e. for actual costs, by agreement of the parties. This agreement displaces the *Obray* "extra or additional" analysis and leaves recovery of those items to be measured by the actual cost thereof. All other items were subject to the *Obray* rule, affording recovery dependent upon whether those items were "extra" or "additional". Reviewing the trial court's accounting between the parties in light of this analysis, we hold the trial court properly affixed responsibility for all items of construction, except in two respects.

First, the trial court erred in finding that the contractor was limited to recovery of only $1700 for material overrun. It is clear from the pleadings, the evidence presented and the trial proceeding that the contractor was seeking more than the $1700 estimated overrun. The evidence is not clear, and the trial court did not find, that the homeowners had agreed to be liable only for $1700 above the contractor's initial estimate for cost of materials. On remand it will be necessary for the trial court to make an additional finding in this regard, determining the liability of the parties for the actual cost of materials above the estimate contained in the initial proposal.

Second, the trial court erred in allocating the cost of windows used in the construction. The initial proposal called for aluminum windows, at a cost which was $1414 less than wooden windows later requested by the homeowners. The trial court made a finding that the increased expense of wood windows requested by the homeowners was included in the initial proposed price submitted by the contractor. However, both Stephen Cutler and the contractor, Geissler, testified that the homeowners agreed to pay $1414 *over* the base figure for wood rather than aluminum windows. Their testimony on this issue was uncontroverted. The finding—that the increased expense for wood windows was included in the initial base contract price submitted by the contractor—is not supported by the evidence and must be set aside.

Accordingly, the judgment is vacated and the case is remanded to the trial court for entry of findings of fact and conclusions of law as to the materials overrun and the charge concerning the windows. Thereafter a modified judgment must be entered. No costs or attorney fees on appeal.

BURNETT and SWANSTROM, JJ., concur.